**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ALISON PALMER** *et al.,*<br>　　**Plaintiffs,**<br><br>　　v.<br><br>**CONDOLEEZZA RICE**,<br>　　**Defendant.** | **Civil Action No. 76-1439 (HHK/JMF)** |

| | |
|---|---|
| **MARGUERITE COOPER** *et al.,*<br>　　**Plaintiffs,**<br><br>　　v.<br><br>**CONDOLEEZZA RICE,**<br>　　**Defendant.** | **Civil Action No. 77-2006 (HHK/JMF)** |

**MEMORANDUM ORDER**

An Evidentiary Hearing regarding <u>Plaintiffs' Application for an Award of Interim Attorneys' Fees and Expenses for February 1, 2002 to January 14, 2003 for Work Related to the 1991-1994 Written Foreign Service Examinations</u> was held from August 17, 2004 through August 20, 2004. At the conclusion of the hearing, several issues remained open for consideration, including whether four witnesses identified by plaintiffs would be allowed to testify at a second phase of the Evidentiary Hearing. On December 17, 2004, the parties jointly filed a praecipe informing the court that plaintiffs only wished to call one witness, Joseph A. Yablonski ("Yablonski"), and that defendant objected to Yablonski being called as a witness. The parties have now briefed this issue. For the reasons stated herein, <u>Defendant's Motion *in Limine* Regarding the Testimony of Joseph A. Yablonski</u> ("Def.'s Mot.") will be granted.

## I.   BACKGROUND

On April 14, 2004, I determined that, in order to resolve the fee dispute between the parties, it was necessary to hold an Evidentiary Hearing. Memorandum Opinion, Apr. 14, 2004, at 12. I then stated: "I will have to hear from the attorneys and paralegals who did the work and then from a person familiar with the Washington legal market who has the credentials to opine that the market would have yielded the fees that these attorneys claim whether for themselves or the paralegals." Id.

In the joint prehearing statement filed on July 23, 2004, plaintiffs included in their schedule of fact witnesses four attorneys, stating that each would "testify as to his experience in task assignment and billing practices in D.C. law firms, the use and award of *Laffey* rates, and searching for class members." Joint Prehearing Statement ("Statement") at 12-13. Plaintiffs candidly explain that they would have preferred to call these witnesses as experts, but because their experience consisted only of their own law practices and litigation, plaintiffs felt that they would not be permitted to give expert opinions as to general billing practices in the District of Columbia. Plaintiffs' Memorandum in Opposition to Defendant's Motion *in Limine* Regarding the Testimony of Joseph A. Yablonski ("Opp'n") at 2. Accordingly, they decided to list all four attorneys as fact witnesses.

On August 11, 2004, defendant filed a motion *in limine,* seeking to preclude the testimony of these attorneys at the Evidentiary Hearing. On August 13, 2004, I issued a memorandum order, explaining that I had anticipated that the witnesses at the hearing on attorney's fees would fall into two categories, "the lawyers and paralegals who did the work [for which the attorneys' fee petition was submitted] and the experts." Memorandum Order, Aug. 13,

2004, at 2-3.  I also stated:

> It is impossible at this stage of the proceeding for me to know how these witnesses will actually testify based on plaintiffs' prediction of their testimony.  Their testimony may be hybrid in that it consists of opinions based on their perceptions, which would be permitted under Federal Rule of Evidence 701, and on their specialized knowledge.  The latter would not be permitted under that rule, meaning that such testimony would have to be deemed expert testimony under Rule 702.  If the testimony falls under Rule 702, plaintiffs' not designating them [as] experts is a clear violation of my [O]rder.

Id. at 3.  I then deferred ruling on whether the four attorneys would be permitted to testify until after defendant had the opportunity to depose the witnesses.  In this way, I hoped to eliminate any unfair surprise to defendants.  Id. at 3.

Subsequent to my August 13, 2004 Order, plaintiffs decided that they would only seek to introduce the testimony of one attorney, Yablonski.  Praecipe, Dec. 17, 2004, at 1.  Defendant deposed Yablonski and then filed the pending motion *in limine,* seeking to preclude Yablonski from testifying.  Specifically, defendant contends that Yablonski cannot be called as a fact witness because he has no personal knowledge of the facts underlying the petition for attorneys' fees in this case.  Defendant also insists that Yablonski cannot testify as to his opinions about billing practices in the D.C. area because such testimony is expert testimony, he was never identified as an expert, and he never provided an expert report as required by Federal Rule of Civil Procedure 26.

In response to these arguments, plaintiffs insist that Yablonski's testimony is admissible as lay testimony and that the opinions they seek to elicit are permissible under Federal Rules of Evidence ("Rules") 602 and 701.  Plaintiffs argue that, if defendant believes that plaintiffs are

eliciting expert testimony, then it can object to any such testimony at Phase II of the hearing.

## II.    DISCUSSION

### A.    Legal Standards

As plaintiffs concede, if Yablonski can testify at all, it will be as a lay witness, not as an expert witness. Accordingly, I will look to Rules 602 and 701 to determine whether Yablonski will be permitted to testify at Phase II of the Evidentiary Hearing.

Under the Federal Rules of Evidence, there are several requirements that must be met before a witness may offer lay testimony. Rule 602 states:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. The rule is subject to the provisions of [R]ule 703, relating to opinion testimony by expert witnesses.

Fed. R. Evid. 602. In addition, a lay witness may give his opinions or inferences as long as they are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

### B.    The Parties' Arguments

Defendant argues that Yablonski should be prohibited from testifying because he has no personal knowledge of the issues addressed in this hearing. According to Yablonski's own deposition testimony, he (1) was never involved in the *Palmer* class action litigation; (2) did not provide any of the services at issue in this proceeding; and (3) did not prepare or advise plaintiffs in their preparation of the bills submitted to the defendant. Yablonski Tr. at 119-121. Indeed,

Yablonski has not even seen the billing records at issue in this proceeding. In his deposition, Yablonski also stated: "I'm not certain I know enough about the issues in dispute in this case to know precisely where I fit in. I'm certainly not in a position to determine what the parameters . . . of relevancy or materiality are. I just don't know." Id. at 8.

Plaintiffs, on the other hand, insist that there are two types of relevant facts in this case: (1) the actions that plaintiffs' counsel took when searching for class members, and (2) whether those actions were reasonable. Opp'n at 3. Plaintiffs acknowledge that Yablonski has no personal knowledge regarding the first category. But, Yablonski does have 35 years of experience reviewing billing records. In addition, in the 1990s, Yablonski was involved in a class action fee dispute involving an extensive search for 235 class members. Yablonski Tr. at 58. On these bases, plaintiffs offer Yablonski as a witness with personal knowledge of "task assignment and billing practices in D.C. law firms, the use and award of *Laffey* rates, and searching for class members." Opp'n at 4-5.

The parties' primary dispute, therefore, boils down to whether Yablonski may offer lay testimony based on his personal experience and how his experience is relevant to these proceedings. Plaintiffs insist that, because Yablonski "has done work similar to that of plaintiffs' counsel in this case," he has relevant personal knowledge. Id. at 3. They also argue that his testimony will assist the court in understanding the processes by which other firms have attempted to locate class members and have billed for that time. Id. at 6. In other words, plaintiffs want to use Yablonski's testimony to prove what they have identified as the second type of fact relevant to this case–whether counsel's actions in searching for class members was

5

reasonable.[1]

### C. Analysis

#### 1. Personal Knowledge and Opinions Rationally Based on the Witness' Perception

Interestingly, plaintiffs cite the advisory committee notes to Rule 701 and two cases[2] cited therein for the proposition that a lay witness may offer opinions based on his perceptions and that such testimony is not the product of "specialized" training or experience. In Lightning Lube, Inc. v. Witco Corporation, 4 F.3d 1153 (3rd Cir. 1993), the district court had allowed a franchisor to offer his lay opinion about future business that he believed was lost as a result of the defendant's tortious interference. The owner's damages estimate was based upon: (1) his "knowledge and participation in the day-to-day affairs of his business" and (2) the reports of an accountant. Id. at 1175. The Third Circuit upheld the district court's decision to allow the business owner to give lay opinion testimony about future damages because the witness had personal knowledge about the business' daily affairs and his testimony was rationally based on his perceptions. Id. at 1174-75.

In Eisenberg v. Gagnon, 766 F.2d 770 (3rd Cir. 1985), an attorney was allowed to testify as a fact witness regarding what he believed should have been included in private offering memoranda because he had personally observed the preparation of the documents. Id. at 780-81.

---

[1] There is some discussion in the pleadings as to whether the issue of reasonableness is an issue of fact or a conclusion to be made by the court. Regardless of how it is characterized, "testimony in the form of an opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704.

[2] These cases are Lightning Lube, Inc. v. Witco Corporation, 4 F.3d 1153 (3rd Cir. 1993) and Eisenberg v. Gagnon, 766 F.2d 770 (3rd Cir. 1985).

The Third Circuit stated: "Since [the witness] personally observed the preparation of the offering memoranda and scrutinized them for adequacy of disclosure, and possessed the qualifications to draw legal conclusions from them, his testimony as to how he would have viewed the undisclosed facts was not an impermissible answer to a hypothetical question by a non-expert, but remained a lay inference from his prior personal experience and observation." Id. at 781.

Simply put, these cases are inapposite here.  In both Lightning Lube and Eisenberg, the witnesses were personally involved in the underlying matters, and their opinions were based on their participation in and observation of the events at issue in the respective lawsuits. Yablonski's opinions, although they may be rationally based on his own perceptions, are not based on observations of facts at issue in this case.  Indeed, it is undisputed that Yablonski has no personal knowledge of the way in which plaintiffs' counsel conducted the search for class members and prepared their time logs.  As of the time of his deposition, he had not even reviewed the bills that plaintiffs had submitted to defendant.  Thus, his opinions as to plaintiffs' counsel's search for class members and their billing practices can stem solely from his own experience in *other* matters.

        2.     *Helpfulness to the Determination of a Fact in Issue and Relevance to the Issue Presented at the Evidentiary Hearing*

Another problem underlying Yablonski's testimony is that he and his firm performed a search for class members one decade prior to the search at issue in this case.  Obviously, at that time, the technology available for searching class members was very different.  Indeed, Yablonski testified that "there was no Google" when he conducted his search for class members and that he was not aware, at that time, that social security searches could be performed.

Yablonski Tr. at 73.  Defendant therefore argues that Yablonski's experience is irrelevant to the issue currently before the court.  Plaintiffs respond by stating, "Yablonski's testimony is not sought as to the reasonableness of the time spent to find individual class members, but rather as to the use of law firm partners and different kinds of employees in searches." Opp'n at 5 n.1. Yet, the reasonableness of the type of work each employee performed depends on what type of technology and services were available at the time.  Accordingly, the court cannot see how evidence of what Yablonski's firm did "would be helpful to . . . the determination of a fact in issue" because one of the main disputes is whether it was reasonable for attorneys and paralegals in the Terris firm to personally perform Internet and Google searches when they searched for hard-to-find class members in this case. See Fed. R. Evid. 701(b).  Indeed, what Yablonski and his firm did at a time so different–technologically speaking–from the period in which the Terris firm performed its search is hardly relevant to this case.

        3.       *Specialized Knowledge*

Finally, and perhaps most importantly, Yablonski's reliance on his professional experience is, as defendants have stated, "precisely what most experts rely upon when they offer an opinion on a community standard and whether the conduct at issue conformed to that standard." Def.'s Mot. at 5-6.  Thus, to introduce testimony about task assignment and billing practices in D.C. law firms and the use and award of *Laffey* rates, plaintiffs would have had to have called Yablonski as an expert.  They did not because they did not believe Yablonski could qualify as an expert.  Simply put, plaintiffs cannot evade the requirements of the Federal Rules by "calling an expert witness in the guise of a layperson." Fed. R. Evid. 701 (2000 amendment). Indeed, the Federal Rules expressly prohibit such a practice.  Thus, plaintiffs' failure to identify

Yablonski as an expert, originally or in the period since Phase I of the hearing, is a clear violation of the Federal Rules of Civil Procedure.

### III.  CONCLUSION

As another court has noted: "The distinction [between lay testimony and expert testimony] is clear. 'Why did you do what you did?' calls for an explanation of a relevant fact. 'Would you have done what he did?' calls for an opinion based on specialized knowledge. The first is permissible [lay witness testimony], the second is not." <u>Algeria Enters. v. Immel's Marine</u>, Civ. A. No. 90-8127, 1992 WL 57929, at *2 (E.D. Pa. March 16, 1992) (plaintiff's accountant was allowed to testify about the records and books he kept and could give opinions about accounting to the extent that they explained his testimony, but defendants would have the right to object to the witness' opinions regarding the propriety of others' actions, based completely on their specialized knowledge). Here, for the reasons explained above, Yablonski's testimony regarding why he did what he did is not helpful to the determination of any fact in issue and may even be irrelevant to the issues presented in this hearing. His opinion as to whether plaintiffs' counsel's actions were reasonable–*i.e.,* whether he would have performed a similar search had he served as plaintiffs' counsel–is based on specialized knowledge, constitutes expert testimony, and will not be admitted. Accordingly, it is, hereby, **ORDERED** that <u>Defendant's Motion *in Limine* Regarding the Testimony of Joseph A. Yablonski</u> is **GRANTED**.

   **SO ORDERED.**

```
_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE
```

Dated: